**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SONJA DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:19-CV-1680 JCH |
| | ) |
| THE BOEING COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

In this action, Plaintiff Sonja Davis ("Plaintiff" or "Davis") alleges that her former employer, Defendant The Boeing Company ("Boeing" or "Defendant") discriminated against her on the basis of race by failing to promote her and creating a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (Doc. 19). Boeing filed a counterclaim against Davis for breach of contract, in connection with a contract between Davis and Boeing pursuant to which she must repay tuition costs incurred by Defendant if she left her employment under certain circumstances. (Doc. 20). Defendant now moves for summary judgment on Plaintiff's claims against it, as well as on its breach of contract counterclaim against Davis (Doc. 44) and, for the reasons explained below, its motion will be granted.

## FACTS[1] AND PROCEDURAL BACKGROUND

Before reciting the facts in this matter, the Court will first address a procedural issue. In support of its Motion for Summary Judgment, Defendant submitted a Statement of

---

[1] The facts are taken from Defendant's Statement of Uncontroverted Material Facts and Exhibits and Plaintiff's response to the same. *See* Docs. 46, 49, and 52-1. In its discussion below, the Court will cite further portions of the record, which will be drawn from the same sources, as necessary to address the parties' arguments.

Uncontroverted Material Facts ("SUMF").  *See* Doc. 46.  Plaintiff, in her response, explicitly admitted every fact save two.  She states that she disputes the facts in ¶¶ 23 and 29 of Defendant's SUMF.  As to each disputed paragraph, Plaintiff states that she "denies the date of September was the most recent denial of a promotion (2/15/2018)" [2] and cites to her Complaint in support of her denial of these disputed facts.  *See* Doc. 52 at 2.  However, it is not clear precisely what Plaintiff is disputing, as neither paragraph 23 nor 29 in Defendant's SUMF contains any reference to September.  Paragraph 23 states, "December 2017 was the most recent time Davis was informed that she would not be moved up to level 3."  Paragraph 29 states, "The promotional decisions and hostility that Davis alleges she experienced at Boeing all happened before February 6, 2018."

Furthermore, a party may not cite to its pleadings to support an assertion of fact for purposes of summary judgment.  Fed. R. Civ. P. 56(c)(1) provides in pertinent part that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admission, interrogatory answers or other materials."  Under the Local Rules of the United States District Court for the Eastern District of Missouri, all matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.  *See* E.D. Mo. L.R. 4.01(E).  Plaintiff's response to ¶¶ 23 and 29 of Defendant's SUMF does not satisfy Fed. R. Civ. P. 56(c)(1), as she does controvert anything in the disputed paragraphs, and does not support her vague denial with appropriate material from the record.  Because Plaintiff has not controverted

---

[2]  Though it is not entirely clear, the Court interprets this to mean that Plaintiff asserts that the most recent act of discrimination was on February 15, 2018, which was the day she voluntarily resigned her position at Boeing.

the facts set forth in ¶¶ 23 and 29 of Defendant's SUMF, and has explicitly admitted all other facts in the SUMF, the Court finds that Defendant's SUMF has been deemed admitted in its entirety by Plaintiff. *See Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006) (district court properly deemed facts admitted that were not properly controverted; Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (2) consider the fact undisputed for purposes of the motion.').

The following material facts, thus, are taken from Defendants' Statement of Uncontroverted Material Facts and supporting exhibits thereto. Plaintiff worked for Boeing as an at-will employee for the Company's Global Trade Controls department as a Trade Control Specialist from April 2015 through February 15, 2018. Boeing imports thousands of items each year on which it must pay taxes, and employees in Plaintiff's position "classify" each item by assigning to it a ten-digit classification code that the government uses to assess the correct tax. Before working at Boeing, Plaintiff had approximately four years of classification experience from an entry-level role at another company and a temporary position where she performed similar work.

Certain positions at Boeing are assigned a numerical level, ranging from 1 being the lowest level, through 5, at the highest level. Higher numbers indicate that the position has more responsibility, experience, and mentoring duties, but do not necessarily include a higher salary. Plaintiff's position was categorized as level 2. The decision to move someone up a level depends on multiple factors, including years of experience, knowledge, ability to perform a broad range of tasks, demonstrated leadership skills, seniority, education, and professional certifications. Advancement also depends on the needs of the department, including whether the

department needs someone performing a higher level role and whether the department's budget can accommodate the advancement in instances where such advancement would include a higher salary.

Carolyn Burkhead ("Burkhead") was Plaintiff's direct supervisor from July 2015 through the end of Plaintiff's employment with Boeing. Burkhead and Plaintiff seem to have had a largely congenial working relationship. For example, Burkhead allowed Plaintiff to work from home for several months while Plaintiff's father was ill, which at the time was a privilege that Burkhead had never extended to any other employee. After Plaintiff's father died of his illness, Burkhead started a collection for Plaintiff. Plaintiff frequently sought career advice from Burkhead, and Plaintiff often followed such advice. During her employment, Plaintiff repeatedly wrote positive emails about Burkhead. For example, on December 18, 2015, Plaintiff wrote to Burkhead, "Thank you for being a top notch, integrity filled, compassionate manager . . . you don't have to be nice, but you are anyway. I've seen some T-E-R-R-I-B-L-E managers in my 45 years of living and you by far rank at the top of the best. Thanks for being you and thanks for being a fantastic BOSS." *See* Doc. 46-10 (ellipsis in original). Another time, Plaintiff wrote to Burkhead that she "really enjoy[ed] our talks," and Burkhead's "management style." *See* Doc. 46-11. On another occasion, Plaintiff wrote to Burkhead, "I'm your biggest cheerleader." *See* Doc. 46-12.

Despite this apparent sometime satisfaction with Burkhead's supervision, Plaintiff testified that while there were "good days" working for Burkhead, at other times Burkhead had a "mood" that could be "sharp" or "blunt," and which Plaintiff "can't quite describe." *See* Doc. 46-1 at 27. However, Plaintiff also testified that Burkhead never yelled or made inappropriate comments, and was not "blatantly rude." *Id*. Plaintiff further testified that Burkhead never made

- 4 -

any race-related comments to her.  *Id*. As further reason for her unhappiness with Burkhead's supervision, Plaintiff testified that Burkhead sometimes cancelled prescheduled meetings with her, but also stated that she did not know why meetings were sometimes cancelled or whether Burkhead also cancelled meetings with other employees as well.  *Id*. at 53-55.  Burkhead attests that she scheduled regular meetings with her subordinates, and that she had to cancel those meetings from time to time due to conflicts with other work obligations, or if she felt that she and the employee had recently communicated sufficiently at other times outside the regular meeting.  *See* Doc. 46-3.  Because Plaintiff and Burkhead were both based in Boeing's St. Louis office, they were able to speak more frequently outside of the regularly scheduled meetings.  *Id*.

Plaintiff wanted to move from level 2 to level 3, and informed others at Boeing, including Burkhead, of her desire to be promoted.  Plaintiff and Burkhead discussed various ways she could expand and improve her skills and visibility at work in order to work towards this goal.  For example, at a goal-setting meeting in 2016, Plaintiff and Burkhead discussed ways Plaintiff could be more visible on projects, and made plans for Plaintiff to shadow other employees so she could learn more about other aspects of work in the Global Trade Controls department.  Plaintiff also discussed ways that Plaintiff could become a more well-rounded employee, including going back to school to obtain a Master's degree in Supply Chain Management.  Plaintiff implemented some of the discussed improvement efforts, including getting a degree.  However, no one at Boeing, including Burkhead, ever told Plaintiff that she would be promoted if she were to successfully complete any of the self-improvement projects that were discussed.  Plaintiff testified at her deposition that no one at Boeing ever made any promises that she would move up a level.  *Id*. at 18.

Burkhead and her manager, Jada Fox, discussed Plaintiff's desire to be promoted, but, for a variety of reasons, both felt that Plaintiff was not yet ready to move up a level. They thought that Plaintiff's experience was narrowly confined to classifications, and that she needed more time to become familiar with the broader aspects of customs work generally. In Plaintiff's performance reviews, Burkhead consistently indicated that she wanted Plaintiff to gain more experience in other areas. For example, in her 2016 performance review, Burkhead wrote that Plaintiff should "broaden her skills in the overall importing venue," and that "she may want to join one of the Global Committee sub-committees." *See* Doc. 46-6 at 2-3. Burkhead also wrote that Plaintiff "will hopefully have more opportunities to showcase her leadership abilities." *Id*. at 5.

Furthermore, Plaintiff did not have extensive experience even in the area of classifications, and employees in her department who were at level 3 or greater had worked at Boeing significantly longer than Plaintiff, or were licensed customs brokers. Moving up a level is not common in the Global Trade Controls department, particularly at such a quick pace. In fact, not one employee who had worked for Boeing for less than three years in classifications had ever moved from level 2 to level 3. At her last performance review in December 2017, Plaintiff was informed that she would not be moving up to level 3 at that time. This was the last time that Plaintiff was told by anyone at Boeing that she was not being promoted.

In January 2017, Boeing agreed to pay her tuition and expenses if Plaintiff pursued her Master's Degree at Fontbonne University, and Boeing and Plaintiff entered into a contract to formalize the arrangement. Pursuant to that agreement, Plaintiff promised to pay that money back to Boeing if she were to resign within 24 months of her final course in the program. Plaintiff completed the coursework and earned her degree in December 2017, and Boeing paid a

total of $22,742.16 for her tuition at Fontbonne University. On February 15, 2018, Plaintiff voluntarily resigned from her position at Boeing in order to take another job with a higher salary. Plaintiff admits that she owed Boeing $22,742.16, as she resigned less than two months after she completed her coursework, but she has not paid any of that amount. In November 2018, Boeing gave Plaintiff formal notice that they were planning to attempt to collect the amount due to them for repayment of the tuition costs.

A few weeks later, on December 3, 2018, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission. Plaintiff then filed this lawsuit in the Circuit Court of St. Louis County, Missouri, on May 1, 2019, asserting claims under Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act, alleging race and gender discrimination. Defendant removed the action to this Court on June 11, 2019, on the bases of federal question and diversity jurisdiction. *See* Doc. 1. This Court dismissed Plaintiff's gender discrimination and MHRA claims for lack of exhaustion. *See* Doc. 17. Plaintiff filed an amended complaint on August 19, 2019. Doc. 19. Defendant subsequently filed a counterclaim against Plaintiff for breach of contract in connection with her failure to pay back the tuition expenses paid by Boeing pursuant to their agreement requiring her to do so. *See* Doc. 20.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The proponent of summary judgment

need not, however, negate the opponent's claims or defenses. *Id*. at 324-25. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*. at 324. The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations omitted). A "genuine" dispute of material fact is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co*., 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

## DISCUSSION

### A. Race Discrimination Claim—Count I

Defendant argues that Plaintiff's claims for discrimination in Count I are time-barred under the statute of limitations under 42 U.S.C. § 2000e-5(e), and accordingly, Defendant is entitled to summary judgment on that Count. For the reasons stated below, the Court agrees.

Title VII mandates that in cases where a person aggrieved by an unlawful employment practice has initially filed a charge of discrimination with the State agency, "such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." *See Tadame v. St. Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003) (noting that under §20003-5(e), statute of limitations for Title VII action is 300 days and begins to run from date of violation). The statute of limitations begins to run at "'the time of the discriminatory acts, not at the time at which the consequences of the acts became most painful.'" *Id*. at 982 (quoting *Nat'l R.R. Passenger Corp., v. Morgan*, 536 U.S. 101, 122 (2002) (cleaned up). If a plaintiff fails to file her Charge of Discrimination within 300 days of the alleged adverse act, the claim must be dismissed. *See Holland v. Sam's Club*, 487 F.3d 641, 643-44 (8th Cir. 2007) ("Because Holland filed her charge of discrimination on January 2, 2004, only those acts occurring within 300 days of January 2, 2004, that is, after March 8, 2003, are actionable under Title VII.").

Plaintiff filed her Charge of Discrimination on December 3, 2018. Accordingly, she must show that she suffered an adverse employment action on or after February 6, 2018. With respect to her claim for discrimination in promotion, the discrete act of discrimination about which Plaintiff complains was the failure to promote her to level 3 when she believed that she was entitled to such promotion. The last time she was told that she was not being promoted was on December, 20, 2017, well outside the 300-day window. Thus, Plaintiff's claim for discrimination in promotion is not timely. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 260-61 (1980) (holding that Title VII limitations period commences at the time the made and communicated to the plaintiff even where the effects of the decision do not occur until some future date).

A claim alleging a hostile work environment is treated somewhat differently with respect to the statute of limitations, since such claims by "[t]heir very nature involve repeated conduct" rather than one discrete act. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Therefore, a plaintiff's claim alleging a hostile work environment is timely so long as at least one hostile act falls within the applicable time period. *Id*. at 122. Plaintiff claims that Burkhead created a hostile work environment by making "assertions that she would not be promoted," and the last such "assertion" was also in December 2017. Furthermore, at her deposition, Plaintiff could not identify a single hostile act that happened on or after February 6, 2018. Thus, Plaintiff's discrimination claims in Count I are not timely, and Boeing is entitled to summary judgment on that basis.

Even if the Court were to reach the merits of Plaintiff's claim for discrimination in promotion, the outcome would be no different. In the absence of direct evidence of discrimination, the Court evaluates Plaintiff's claim under the familiar *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012) ("Similar to claims of race discrimination, when a plaintiff 'has no direct evidence of age discrimination, his claims are analyzed under the . . . burden-shifting scheme of *McDonnell Douglas Corp*. . . ..'") (quoting *Haigh v. Gelita USA, Inc*., 632 F.3d 464, 468 (8th Cir. 2011)). Under the burden-shifting analysis, a plaintiff must first establish a prima facie case of intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff, in order to make out a prima facie case of discrimination within that framework, must show that she is in a protected class, applied for promotion, was qualified, was rejected, and that a similarly situated employee outside her protected class received the promotion. *See Cardenas v. AT&T Corp*., 245 F.3d 994, 998 (8th

Cir. 2001). Plaintiff plainly cannot make out a prima facie case of discrimination under this framework, as she cannot show that she applied for an available position and "employees similarly situated but not part of the protected group were promoted instead." *Id*. Plaintiff has not identified any person who worked in her department for less than three years, performing primarily classification duties, who was promoted to level 3. Furthermore, Defendant has submitted uncontested evidence demonstrating that not one similarly situated employee, of a protected group or not, has ever moved from level 2 to level 3 in similar circumstances. *See also Flynn v. AT&T Yellow Pages*, 780 F. Supp. 2d 886, 896 (E.D. Mo. 2011) (summary judgment granted for defendant where plaintiff could not identify a similarly situated employee outside the protected class who was promoted). Finally, Plaintiff has put forth no evidence that any adverse employment decision was taken against her for reasons permitting an inference of race-based discrimination. There is simply nothing on the record to indicate that race played any role in Boeing's decision to not promote her.

Plaintiff is likewise unable to make a showing on her claim that harassment by Burkhead created a hostile work environment. Title VII prohibits an employer from subjecting its employees to a hostile work environment "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Her harassment claim requires Plaintiff to show that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic under Title VII; (4) the harassment affected a term, condition, or privilege or employment; and (5) the employer knew or should have known of the harassment and failed to take proper action. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). Federal harassment standards are "demanding," and require that the allegedly harassing conduct be "extreme" and not merely rude or unpleasant. *Blomker v. Jewell*,

831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Title VII is violated by such workplace conduct only when "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Al-Zubaidy*, 406 F.3d at 1038. The work environment "must be both [an] objectively and subjectively offensive one that a reasonable person would find hostile or abusive." *Faragher*, 524 U.S. at 787-88. The Supreme Court has instructed that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* at 788 (internal quotation omitted); *see also Al-Zubaidy*, 406 F.3d at 1039 ("The [Supreme] Court implores lower courts to apply the demanding harassment standards to filter out complaints attacking the ordinary tribulations of the workplace . . ..") (internal quotations and citations omitted).

Here, the sum total of conduct alleged by Plaintiff to be hostile is "[Burkhead]'s assertions that Plaintiff would not be promoted." Doc. 19 at 2. At her deposition, when asked to further elaborate on the actions that she felt made her workplace hostile, Plaintiff mentioned that Burkhead was sometimes less warm than usual, that she sometimes walked by Plaintiff's desk without stopping to chat, and that her tone could be a bit off-putting. *See* Doc. 46-1 at 27-29. Plaintiff variously described Burkhead's tone as "sharp," "blunt," or "passive aggressive." When asked for an example of Burkhead exhibiting such a tone, Plaintiff described how, when she told Burkhead that she was planning to resign, Burkhead did not ask Plaintiff where she was going or offer congratulations. *Id.* at 27. When asked for other examples, Plaintiff could not remember any other specific occasions. Petty, inconsequential slights, minor annoyances, or a

simple lack of good manners do not create an actionable hostile work environment under Title VII. *See Clegg v. Arkansas Dept. of Correction*, 496 F.3d 922, 929 (8th Cir. 2007). Plaintiff's allegations, even accepted as true and granting the benefit of all reasonable inferences that can be drawn from the same, evoke a workplace environment that could be described, at worst, as occasionally less than ideal. Furthermore, none of the conduct complained of has any apparent connection to Plaintiff's race, and Plaintiff admits that no one at Boeing ever made race-related comments to her. The conduct described by Plaintiff falls far short of rising to a level of harassment that the Court would characterize as sufficiently severe or pervasive as to constitute a hostile work environment as a matter of law under Title VII.

### B. Detrimental Reliance Claim—Count II

It is difficult to know what to make of Plaintiff's claim in Count II. She titles the Count as one for "Detrimental Reliance," which is not a cognizable cause of action under Missouri law. However, detrimental reliance is one element of a claim for promissory estoppel. *See Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. 2007). Additionally, the allegations in Plaintiff's Count II appear to sound in equity. Plaintiff alleges, in her Amended Complaint, that she was told when hired that she would be promoted quickly, that she took certain actions in reliance on that statement, including obtaining her Master's degree, and that she was not promoted. Thus, the Court will construe her claim in Count II as one for promissory estoppel.

The doctrine of promissory estoppel is a form of equitable estoppel that is "resorted to in Missouri in extreme cases to avoid unjust results." *Mayer v. King Cola Mid-Am., Inc.*, 660 S.W.2d 746, 749 (Mo. App. Ct. 1983). To prevail on a claim of promissory estoppel, Plaintiff must prove: "(1) a promise; (2) on which [she] relie[d] to her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only

enforcement of the promise could cure." *Clevenger*, 237 S.W.3d at 590. "The promise giving rise to the cause of action must be definite, and the promise must be made in a contractual sense." *Id*. "In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Id*.

Defendant, in its memorandum in support of its motion for summary judgment, argued that Plaintiff's claim must fail because she cannot prove the essential elements of the claim, including, most saliently, the existence of a promise. Defendant correctly notes that Plaintiff has admitted that no one at Boeing ever made any promises to her regarding a promotion, and accordingly, Plaintiff cannot establish that essential element of the claim. Furthermore, Plaintiff did not respond to Defendant's arguments concerning her claim in Count II, nor even mention the claim in her response in opposition to Defendant's motion for summary judgment, and thus Plaintiff appears to have abandoned her claim for promissory estoppel. *See Halloran v. Houlihan's Restaurants, Inc.,* Case No. 4:11-cv-01028-DGK, 2013 WL 3353870, at *1 n. 1 (W.D. Mo. July 3, 2013) ("By not responding to Defendants' arguments [in support of summary judgment], Plaintiff has abandoned her . . . claims."). The Court concludes that Defendant is entitled to summary judgment on Count II of Plaintiff's Amended Complaint.

### C. Boeing's Breach of Contract Counterclaim

Boeing asserts that Davis voluntarily enrolled in Boeing's Learning Together Program ("LTP"), pursuant to which Boeing covers tuition expenses for eligible employees. As a participant in the LTP, Davis elected to pursue a Master's degree during the 2016-2017 academic year, and requested that Boeing provide her with funds to be used exclusively for her education. Davis signed two separate agreements, one dated January 30, 2017, and another on February 1, 2018, that described the parties' respective rights and obligations in connection with the LTP.

Those agreements stated that Davis would "owe and be legally obligated to repay Boeing for all education expenses paid by Boeing on [her] behalf should any of the following events occur: . . . I voluntarily resign or am terminated for cause within 24 months from the end date of my last paid course in my graduate degree program[.]." Boeing covered all requested funds for Plaintiff's tuition, in the amount of $22,742.16. Plaintiff subsequently resigned on February 15, 2018, only fourteen days after Plaintiff reconfirmed her obligations under the LTP, and within the 24-month period after the date of her last paid class in her Master's program, thus triggering her repayment obligation.

On February 26, 2018, Boeing sent Plaintiff a collection letter demanding the $22,742.16 that she was advanced for her tuition expenses. Plaintiff has not repaid any of the amount due under the LTP contract. Boeing attempted to resolve the matter through informal discussions with Davis throughout much of 2018. After negotiations proved unsuccessful, in mid-November 2018, Boeing informed Plaintiff that she remained obligated to repay the entire balance. Plaintiff then filed a Charge of Discrimination on December 3, 2018, which was followed by the instant action. Boeing then brought this counterclaim against Plaintiff for breach of contract, seeking $22,742.15, plus interest and attorney's fees incurred by Boeing in connection with the claim. (Doc. 20.)

To prevail on a claim for breach of contract under Missouri law, Boeing must prove "(1) the existence and terms of a contract; (2) that the plaintiff performed or tendered performance pursuant to the contract; (3) breach of contract by the defendant; and (4) damages suffered by the plaintiff." *Smith Flooring, Inc., v. Pennsylvania Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 941 (8th Cir. 2013).

Much like her claim for promissory estoppel, Plaintiff presents no argument or evidence to counter Defendant's motion for summary judgment on its breach of contract claim.  Her memorandum in opposition mentions the claim only once in passing, stating, "The matter of Defendants counter claim is intimately bound up in the save dispute."  Doc. 52-1 at 4.  The Court is unsure what Plaintiff means by this statement, but in any event, it does not provide any meaningful counterargument to consider when ruling on Boeing's counterclaim.  Furthermore, Plaintiff has admitted:  (1) that she entered into a contract with Boeing that required her to reimburse Boeing for the cost of her tuition if she resigned within 24 months of her final course; (2) that Boeing fulfilled its obligations under the contract by paying the tuition; (3) that she voluntarily resigned within the relevant 24-month period; and, (3) that she has not paid Boeing back the amount paid for her tuition, as required by the terms of the LTP contract.  These undisputed facts fulfill each element of a breach of contract claim, and there is thus no material dispute for a factfinder to resolve.  The amount of damages is likewise established by undisputed evidence of record—Boeing provided $22,742.16 in tuition for Plaintiff's Master's program.  Defendant has established that it is entitled to summary judgment on its counterclaim for breach of contract.

## CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on Counts I and II of Plaintiff's Amended Complaint.  Defendant is also entitled to summary judgment on its breach of contract counterclaim against Davis, in the amount of $22,742.16, plus attorneys' fees and costs related thereto.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 44)

is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant should timely file a motion for attorneys' fees with appropriate supporting documentation pursuant to Local Rule 8.02.

**IT IS FINALLY ORDERED** that the trial setting in this matter is **VACATED**.

The Court will issue a separate judgment consistent with this Memorandum and Order.

Dated this 6th day of October, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE
JEAN C. HAMILTON